UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-118-MOC-SCR

| | | |
|---|---|---|
| **VANESSA MATTHEWS, LISA MATTHEWS** | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | ORDER |
| **SIZZLING PLATTER, LLC,** | ) ) ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 10). Plaintiffs have responded in opposition. (Doc. No. 14). Defendant has replied to Plaintiffs' opposition. (Doc. No. 16). For the following reasons, Defendant's Motion is **GRANTED in PART and DENIED in PART**.

**I.    BACKGROUND**

Plaintiffs Vanessa Matthews and Lisa Matthews previously worked as Assistant General Managers at the Wingstop restaurant located at 6215 Old Post Road, Suite 100, Charlotte, North Carolina 28212. (Doc. No. 9 ¶ 14). Plaintiffs are a married lesbian couple and are both minorities (African-American). (Id. ¶¶ 19, 42). Plaintiffs state that they had been working together since they were hired, which was before 2022. (Id. ¶ 19).

In January 2022, Plaintiffs tested positive for COVID-19 and quarantined according to Center of Disease Control guidelines. When Plaintiffs returned to Wingstop on January 23 to work their scheduled shifts following their quarantine period, they met the new acting General

1

Manager Jahmir. (Id. ¶¶ 15–17). Neither Plaintiff had met or worked with Jahmir before this date. (Id. ¶ 30). Jahmir informed them when they began their scheduled shift that they were no longer allowed to work the same shifts because they were family. (Id. ¶ 18). Jahmir then told Plaintiff Vanessa that she needed to leave the premises, to which Plaintiff Vanessa refused because she had been scheduled to work. Jahmir, allegedly on the direction of a general manager at a separate location, then called for police assistance and had Plaintiffs escorted from the premises. (Id. ¶¶ 22–24). Plaintiffs allege that their encounter with the police was traumatizing and that they suffered severe humiliation, embarrassment, sleepless nights, anxiety, and depression from the incident. (Id. ¶¶ 26, 27, 29).

Defendant terminated Plaintiffs' employment after this incident. (Id. ¶¶ 31, 33). Plaintiffs allege that some of their former co-workers told them that Jahmir had been discussing Plaintiffs' COVID-19 diagnosis with staff at a volume loud enough to be heard by patrons. (Id. ¶ 21). Plaintiffs also allege that Jahmir frequently discussed Plaintiffs private health information with employees. (Id.).

When they were hired, Plaintiffs were provided an employee handbook, which detailed the required policies and procedures for employment. The handbook did not state that family members were not allowed to work together. (Id. ¶ 20). After January 23, 2022, Plaintiffs contacted the District Manager, Justin Kirby to discuss the events. Kirby allegedly informed Plaintiffs that Jahmir was not authorized to have them removed from the premises and had not been instructed to do so. (Id. ¶ 25). Plaintiffs allege that Defendant subsequently hired a Caucasian female as Assistant General Manager at a salary significantly larger than Plaintiffs' salaries. (Id. ¶ 32).

Plaintiffs further allege that, before this incident, Plaintiff Vanessa Matthews was offered additional pay to move to a separate location, (Id. ¶ 28), minority LGBTQ employees were treated disparately worse than Caucasian employees, (Id. ¶ 34), and Defendant was aware of this disparate treatment and ratified it by not properly investigating, disciplining, and training its employees. (Id. ¶ 35).

## II. PROCEDURAL BACKGROUND

Plaintiff filed this action on January 23, 2023, in the General Court of Justice, Superior Court Division, for Mecklenburg County, North Carolina. (Doc. No. 1-1). Defendant removed the action to this Court on February 24, 2023. (Id.). Following Defendant's original Motion to Dismiss, Plaintiffs submitted an amended complaint pursuant to Federal Rule of Civil Procedure Rule 15(a)(1)(B). (Doc. No. 9). Based on the facts stated herein, Plaintiffs allege: (1) a violation of N.C. GEN. STAT. § 143-422.2(a) (hereinafter "NCEEPA"); (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and (4) negligent retention and training.

## III. STANDARD OF REVIEW

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## IV. DISCUSSION

### A. Plaintiffs' Claim for Wrongful Discharge under the NCEEPA

Employers in North Carolina cannot terminate an employee for reasons that violate the public policy of North Carolina. Coman v. Thomas Mfg. Co., 381 S.E.2d 445, 446 (1989). Plaintiffs allege that they were discharged in violation of public policy as set forth in N.C. GEN. STAT. § 143-422.1, known as the North Carolina Equal Employment Practices Act (NCEEPA). (Doc. No. 9 ¶ 48). The NCEEPA states in relevant part, "it is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race . . . sex." N.C. GEN. STAT. § 143-422.2(a). The evidentiary burden and principles of law for this claim are the same as those required for Title VII claims. Owens v. Northwood Ravin, LLC., 3:21-cv-373-FDW-DCK, 2022 WL 17970211, at *12 (W.D.N.C. Dec. 27, 2022) (citing N.C. Dep't of Corr. v. Gibson, 308 N.C. 131 (N.C. 1983)). Thus, in meeting their burden, Plaintiffs must show that Defendant took an adverse employment action against them because of their race or sex. See McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 588 (4th Cir. 2015).

4

In support of their constructive discharge claim, Plaintiffs allege that "Defendant treated Plaintiffs and other minor[ity] employees disparately worse than Caucasian employees"; Plaintiffs "endured continuous and intensifying disparate treatment … which became increasingly negative," and that minority employees were treated worse that "similarly situated" Caucasian employees; "Caucasian … employees were never subjected to arbitrary rules…not enunciated in Defendant's employee handbook and manuals"; "Plaintiffs lodged complaints on multiple occasions to their superiors"; and after Plaintiffs' termination, Defendant hired a Caucasian female as Assistant General Manager and provided her with a salary that was significantly larger than Plaintiffs' salaries.

The Court first finds that, in light of the liberal pleading standards of Iqbal and Twombly, the Court will deny the motion to dismiss as to Plaintiff's claim for wrongful discharge based on Plaintiffs' claim that they were terminated because of their race or sex. However, to the extent that Plaintiffs purport to bring a retaliation claim under the NCEEPA, this claim fails, as the NCEEPA does not cover claims based on retaliation. See Bauer v. Charter Sch. USA, Inc., NO. 5:21-cv-492-FL, 2022 WL 2721339, at *3 (E.D.N.C. July 13, 2022) (citing McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003) and Witt v. Harris Teeter, Inc., 359 N.C. 625 (2005)); see also Swann v. Source One Staffing Sols., 778 F.Supp.2d 611, 622 (E.D.N.C. 2011) (NCEEPA does not "create a private right of action for retaliation or provide a source of public policy concerning retaliation").

**B. Plaintiffs' Claim for Intentional Infliction of Emotional Distress**

Plaintiffs assert a claim for intentional infliction of emotional distress arising from the following allegations: Defendant "maliciously, consistently, and purposely" enforced arbitrary rules that were not found in the employee handbook and policy manuals, unfairly exhibited work

5

authority over Plaintiffs, created a hostile work environment, and intended to inflict emotional distress or, at the very least, knew or should have known that emotional distress was a likely result of its conduct. (Doc. No. 9 ¶¶ 53–55). The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant, (2) which is intended to and did in fact cause (3) severe emotional distress. Dickens v. Puryear, 276 S.E.2d 325, 335 (1981). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hensley v. Shuttles, 167 F. Supp. 3d 753, 767 (W.D.N.C. 2016) (citing Smith–Price v. Charter Behavioral Health Sys., 595 S.E.2d 778, 783 (2004)).

In North Carolina, showing that conduct has met this definition of extreme and outrageous in the employment setting is especially challenging. See, e.g., Sturdivant v. Arc of Haywood Cnty., Inc., No. 1:18cv123, 2018 WL 3717214, at *5 (W.D.N.C. July 19, 2018) ("North Carolina courts will rarely find that conduct is sufficiently extreme or outrageous in an employment setting."); Allen v. City of Raleigh, No. 5:13-cv-522-D, 2014 WL 840735, at *7 (E.D.N.C. Mar. 4, 2014) ("Stating a viable claim of intentional infliction of emotional distress under North Carolina law for conduct arising in the workplace is very difficult."); Wilson v. Southern Nat'l Bank, 900 F. Supp. 803, 811–12 (W.D.N.C. 1995) ("It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of" IIED) (quotations omitted).

Here, Plaintiffs allege that the general manager Jahmir would not allow Plaintiffs to work together anymore upon their return from a period of quarantine, discussed their COVID-19 diagnosis loudly with Plaintiffs' co-workers, frequently discussed Plaintiffs' health information,

6

told Plaintiff Vanessa that she had to leave because Plaintiffs could no longer work together, called the police when Plaintiff Vanessa refused to leave, and terminated Plaintiffs. (Doc. No. 9 ¶¶ 18, 21-23, 31). These allegations were not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hensley, 167 F. Supp. 3d at 767 (quoting Smith–Price, 595 S.E.2d at 783). Thus, this claim is dismissed.

### C. Plaintiffs' Claim for Negligent Infliction of Emotional Distress

To successfully state a claim for negligent infliction of emotional distress, plaintiff must allege (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; (3) the conduct did in fact cause the plaintiff severe emotional distress. Johnson v. Ruark Obstetrics & Gynecological Assocs., P.A., 395 S.E.2d 85, 97 (1990). Plaintiffs allege that Defendant "knew or should have known that emotional distress was a likely result of its conduct." (Doc. No. 9 ¶¶ 55). Plaintiffs also describes the actions taken against them as "negligent." (Id. ¶¶ 39, 61). However, the Plaintiffs also allege that "[t]he unlawful employment practices complained of above were intentional." (Id. ¶¶ 49).

Plaintiffs predicate their claims for wrongful termination and intentional infliction of emotional distress on the same factual allegations underlying their claims for negligent infliction of emotional distress. Plaintiffs claim that these alleged actions show they were terminated because of their race and that the Defendant intended to cause them severe emotional distress. These allegations of intentional conduct fail to meet the first element that Defendant acted negligently. See Bratcher v. Pharm. Prod. Dec., 545 F. Supp. 2d 533, 545–46 (E.D.N.C. 2008);

7

Mitchell v. Lydall, Inc., No. 93–1374, 1994 WL 38703, at *3 (4th Cir. 1994). Thus, this claim must be dismissed.

### D. Plaintiffs' Claim for Negligent Retention and Training

A claim for negligent supervision or retention, requires that a plaintiff allege: (1) an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) before the act, the employer knew or had reason to know of the employee's incompetence. Smith v. First Union Nat'l Bank, 202 F.3d 234, 249–50 (4th Cir. 2000) (citing Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 124 (1986)). Here, the Court finds that, in light of the liberal pleading standards of Iqbal and Twombly, the Court will deny Defendant's motion to dismiss Plaintiffs' claim for negligent supervision or retention.

### V. CONCLUSION

For the reasons stated herein, Plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress are dismissed. The Court denies the motion to dismiss as to Plaintiffs' claims for wrongful discharge and negligent supervision or retention.

### ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss the Amended Complaint, (Doc. No. 10), is **GRANTED in PART and DENIED in PART.** Furthermore, the Motion to Dismiss the original Complaint, (Doc. No. 7), shall be **TERMINATED** as **MOOT**.

Signed: July 31, 2023

Max O. Cogburn Jr
United States District Judge